IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.                                                           Criminal No.: 2:15CR00116-001

WESLEY PAUL HADSELL,

    Defendant.

**DEFENDANT'S POSITION ON SENTENCING**

    NOW COMES the defendant Wesley Paul Hadsell (the "Defendant"), by counsel, pursuant to § 6Al.2 of the *Sentencing Guidelines and Policy Statements* and the Court's sentencing procedures order, and files his position on the sentencing factors set forth in 18 U.S.C. § 3553(a).  For the reasons outlined below, the Defendant submits that a sentence of thirty-six (36) months is sufficient, but not greater than necessary, to satisfy the statutory considerations set forth in 18 U.S.C. § 3553(a).  In support of his position, the Defendant states as follows:

**PROCEDURAL HISTORY**

    The Defendant was indicted, by superseding indictment, on two counts of felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924 (a)(2) & 924(e).  On November 6, 2015, the Defendant entered a guilty plea to Count One of the superseding indictment, pursuant to a written plea agreement.  The written plea agreement maintained the Defendant's right to contest whether he meets the criteria for a sentencing enhancement pursuant to the Armed Career Criminal Act ("ACCA"), which is codified at 18 U.S.C. § 924(e).  The Defendant's sentencing hearing is scheduled on June 24, 2016.  The Defendant does not intend to call witnesses or introduce evidence and he will rely on the legal arguments below in support of his position.

## UNRESOLVED OBJECTIONS AND GUIDELINES CALCULATIONS

**I.     The Defendant Objects To Paragraphs 25, 117, And 118 OF The Pre-Sentence Investigation Report ("PSR") Which Improperly Designate The Defendant As An Armed Career Criminal.**

In the PSR, the Probation Officer applied a Chapter Four sentencing enhancement, pursuant to § 4B1.4 of the United States Sentencing Guidelines ("USSG"), because of his conclusion that the Defendant is an armed career criminal as defined in the ACCA.  *See* PSR, ¶ 25.  The Probation Officer designated the Defendant as an armed career criminal based upon his conclusion that Defendant was previously convicted of three or more prior violent felony or serious drug offenses, or both, which were committed on different occasions.  *Id.*  Accordingly, the Probation Officer erroneously determined that the Defendant is subject to an enhanced sentence pursuant to the provisions of 18 U.S.C. § 924(e), which increases the applicable sentence range for Count One from zero (0) to ten years (10) in prison to a mandatory minimum sentence of fifteen (15) years and a maximum sentence of life in prison.  The Defendant, by counsel, also objected to paragraphs 47, 117, and 118 of the PSR due to the inclusion of this sentencing enhancement.

The definitions of "serious drug offense" and "violent felony" are found in 18 U.S.C. §§ 924(e)(2)(A) and (B).  The Defendant has never been convicted of any "serious drug offense."  *See* PSR, ¶¶ 36-44.  The ACCA defines a "violent felony" as:

any crime punishable by imprisonment for a term exceeding one year…that-

(i)     Has as an element the use, attempted use, or threatened use of physical force against the person of another; or

*(ii)     Burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

2

§ 924e(2)(B). The United States Supreme Court invalidated as unconstitutionally vague the italicized language above, also known as the "residual clause." *Johnson v. United States*, 135 S. Ct. 2551, 2555-2556 (2015)("*Johnson II*"). Five years earlier, the Supreme Court narrowed the scope of the "force clause" (i.e. § 924(e)(2)(B)(i)) in a decision commonly known as *Johnson I*. *See Johnson v. United States*, 559 U.S. 133, 130 S.Ct. 1265 (2010). *Johnson I* considered whether Florida's battery law, which permitted a finding of guilt even for nominal, nonconsensual contact to be counted as a violent felony under the ACCA's force clause. *Id.* at 140. The Supreme Court concluded in *Johnson I* that the phrase "physical force" means violent force-that is force capable of causing physical pain or injury to another person. *Id.* The Supreme Court's opinion in in *United States v. Descamps*, 133 S. Ct. 2276 (2013), narrowed the scope of burglaries that qualify as ACCA predicates based on the "enumerated offense" clause, which is the non-italicized portion of § 924(e)(2)(B)(ii). *See Supra*. Based on the Supreme Court's opinions in *Descamps, Johnson I, and Johnson II*, the Defendant has not previously been convicted of three or more violent felony predicate offenses under the ACCA. To the contrary, the Defendant only has one prior felony crime of violence that can serve as an ACCA predicate.

### A. THE DEFENDANT'S PRIOR CONVICTION FOR VIRGINIA STATUTORY BURGLARY DOES NOT QUALIFY AS A PREDICATE CRIME OF VIOLENCE FOR THE ACCA.

Since *Johnson II* and the Supreme Court's opinion in *Descamps*, Virginia statutory burglary no longer qualifies as a violent felony offense under the ACCA.

In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court held that only "generic" burglaries could be used as predicate felony offenses under the ACCA. The Court stated that "a person has been convicted of burglary for the purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic

elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. When a breaking and entering statute permits conviction based on entry into cars, boats or vending machines, they do not count as "generic" burglary convictions under *Taylor*.

Since that time, the Supreme Court has substantially changed the landscape applying to burglary convictions. The Defendant was convicted under Virginia Code §§ 18.2-90 and 18.2-91, which at the time of his conviction stated:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, manufactured homes, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.
>
> If any person commits any of the acts mention [above] with intent to commit larceny, or any felony other than murder, rape or arson in violation of [Virginia Code] §§ 18.2-77, 18.2-79 or § 18.2-80, or if person commits any of the acts mentioned [above] with intent to commit assault and battery, he shall be guilty of statutory burglary, punishable by confinement in a state correctional facility for not less than one or more than twenty years or, in the discretion of the jury or the court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500.00, either or both.

Va. Code §§ 18.2-90 and 91. The first paragraph, § 18.2-90, authorizes enhanced punishments when the "intent" is to commit certain specified offense that do not include larceny. They second paragraph, § 18.2-91, specifies the available punishment when the breaking and entry into the structure, vessel or vehicle is done "with intent to commit larceny".

Where statutes include proscriptions against several different offenses, courts must determine which criminal offense the defendant was actually convicted of committing. In such

4

cases, courts may use the "modified categorical approach," which permits the use of certain court-generated documents to determine if a defendant has been necessarily convicted of a qualifying offense. *See Shepard v. United States*, 544 U.S. 13 (2005); *United States v. Foster*, 662 F.3d 291 (4th Cir. 2011). In 2013, the Supreme Court held that the modified categorical approach has very limited use, and could never apply unless the statute of conviction was "divisible." *See Descamps*. The Court held that:

> We have previously approved a variant of this method-labeled (not very inventively) the "modified categorical approach" when a prior conviction is for violating a so-called "divisible statute"
> …
>
> This case presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an "indivisible" statute-i.e., one not containing alternative elements-that criminalizes a broader swath of conduct than the relevant generic offense. That would enable a court to decide, based on information about a case's underlying fact that the defendant's prior conviction qualifies as an ACCA predicate even though the elements of the crime fail to satisfy our categorical test. Because that result would contravene our prior decisions and the principles underlying them, we hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.

Thus since *Descamps*, the question is whether the statute in question is indivisible, in which the categorical approach is used, or divisible, in which case the modified categorical approach is used to determine only which alternative crime is charged. *Omargharib v. Holder*, 775 F.3d 192, 196-98 (4th Cir. 2014). The Virginia breaking and entering statute, as in *Taylor*, "sweeps more broadly" than just generic burglary. *Descamps*, 133 S. Ct. at 2283.

The Virginia statute is overly broad in the same as the way in which the statute in *Descamps* was too broad, rendering the modified categorical approach inappropriate. In *Descamps*, the Supreme Court rejected the use of Descamps' prior California burglary conviction to impose an enhanced ACCA sentence on the grounds that the California burglary

statute differs from the *Taylor* definition of a generic burglary because it permits conviction even where the defendant's entry into the premises was not "unlawful". *Descamps,* 133 S. Ct. at 2282 (noting that California burglary statute "covers, for example, a shoplifter who enters a store, like any customer, during normal business house"). Identically, Virginia's breaking and entering statute does not require that the entry be unlawful-indeed, it expressly includes the entering without breaking in the nighttime, even with a claim of right, so long as the defendant does so with the intent to commit a specified offense. As in *Descamps*, Virginia courts interpreting the Virginia burglary statute have upheld burglary convictions where a defendant enters a store that is open to the public for business, as long as his intent to commit robbery or some other offense is shown. *See, e.g., Clark v. Commonwealth*, 22 Va. App. 673, 674-75 (1996) (upholding burglary conviction for conduct substantially outside the *Taylor* definition).

The Virginia burglary statute is also broader than a "generic" burglary because it includes breaking and entering automobiles, rail cars and watercraft, which are not within generic definition of burglary. Importantly, the entry of automobiles, boats and rail cars with the intent to commit additional criminal offenses are not described as separate crimes with separate penalties, nor are they described in separate subsections of the Virginia statute. These are simply alternative methods of committing the single and indivisible crime of statutory burglary with the intent to commit larceny under Virginia law. *Omargharib*, 775 F.3d at 199; *Rendon v. Holder*, 764 F3d 1077 (9th Cir. 2014) (""The critical distinction is that while indivisible statutes may contain multiple, alternative means, only divisible statutes contain multiple, alternative elements of functionally separate crimes""").

The Fourth Circuit's decision in *Omargharib* confirms that this analysis, and emphasizes that the use of the disjunctive term "or" between difference parts of the statute does not denote divisibility in the *Descamps* sense. *Omargharib* 775 F.3d at 199. In *Omargharib*, the offense of the common law larceny was considered under the categorical approach to determine whether the conviction was an "aggravated felony". The Court of Appeals held that even though the statute might be violated by either theft or fraud, because, the statute did not set out separate offenses with separate elements, the offense was indivisible. "Stated differently, crimes are divisible only if they 'set out elements in the alternative and thus create multiple version of the crime". *Id*. at 198 (quoting *United States v. Montes-Flores*, 736 F.3d 357, 365 (4th Cir. 2013)). Moreover, "[e]lements, as distinguished from means, are factual circumstances of the offense the jury must find 'unanimously and beyond a reasonable doubt.'" *Id.* at 198 (quoting *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013)).

To differentiate between the alternative elements of an offense and mere alternative means of committing that offense, the Fourth Circuit in *Omargharib* used the applicable Virginia jury instructions to analyze what they required a jury to agree about in order to convict. The Court held that because the jury instructions did not require unanimity as to the means of the offense, then the statute was indivisible. *Id.* at 199.

A review of the Virginia model criminal jury instructions requires that this Court conclude that the Virginia breaking and entering statute is similarly indivisible. That instruction demonstrates that the offense has only two elements:

>Instruction G12.220
>
>The defendant is charged with the crime of statutory burglary. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
>(1) That the defendant without permission [in the nighttime entered; in the daytime broke and entered; in the daytime entered and concealed himself in] [a dwelling house; an occupied out-house adjoining a dwelling]; and
>(2) That he did so with intent to commit [larceny; assault and battery; (name of felony other than murder, rape, robbery or arson)].
>
>If you find the evidence that the Commonwealth has proven beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty….
>
>If you find that the Commonwealth has failed to prove beyond a reasonable doubt either or both of the elements of the offense, then you shall find him not guilty.

Virginia Model Jury Instructions Cr., Vol. 1, No. G12.220. The first element thus includes a description of any of the qualifying structures, vessels or vehicles in the statute, including vessels, automobiles and rail cars. This interpretation is further adopted in the commentary to the jury instruction:

>Section 18.2-91 also classifies as statutory burglary the act of entry at nighttime or the breaking or entering during day or nighttime or entry and concealment during the daytime in any office, shop, manufactured homes, storehouse, warehouse, banking house, or of any other house, ship, vessel, river draft, railroad car, or of any automobile, truck or trailer used as a dwelling or place of human habitation, with intent to commit larceny, assault, battery, or any felony other than murder, rape, or robbery, or (as of July 1, 1997) arson.

*Id.* at I-283 (2001) (emphasis added)

These jury instructions do not require the jury to find unanimously that the offense was committed upon a structure versus a vessel, railroad car, automobile or truck – as would be required if were the structure type were considered *elements* of the offense of burglary. *See Apprendi v. New Jersey*, 530 U.S. 466, 476-78 (2000) (noting that elements of an offense must be found by a jury, citing *In re Winship*, 397 U.S. 358, 364 (1970)); *Richardson v. United States*, 526 U.S. 813 (U.S. 1999) (explaining the jury unanimity requirement for every element of an offense). Because it does not treat these options as elements requiring unanimity, it is an indivisible statute under *Omargharib, Descamps, and Johnson.* Thus, only the categorical approach should be applied to all Virginia statutory burglary predicates; the modified categorical approach cannot be used.

In *Span*, the Fourth Circuit recognized the Court may not employ the "modified categorical approach" where the defendant has a prior conviction under an indivisible statute, i.e., one that does not list alternative elements, to determine whether the prior conviction qualified as an ACCA predicate. *Id.* at 331. The Court also acknowledged "the tension between *Descamps* and the Fourth Circuit's prior holding in *United States v. Thompson*, 421 F. 3d 278 (4th Cir. 2005), which permits a sentencing court to dive into *Shepard* approved documents to sort out the facts of the predicate conviction. *Id.* at 331-332. *Descamps* suggested this exceeds the Court's proper role. *Id.* The Fourth Circuit decided to "leave to another case on another day the continued viability of *Thompson*" because the Government failed to satisfy its burden to establish that Span was an armed career criminal on other grounds. *Id.* at 332.

Since Virginia statutory burglary includes conduct not within the *Taylor* definition of generic burglary, it cannot be used under the "enumerated offense" clause. It additionally never

fit under "Force Clause," and now, it can no longer count as a "residual clause" offense, given the Supreme Court's holding in *Johnson II* that the residual clause was unconstitutionally vague.

Assuming for the sake of argument that the Court applies the "modified categorical approach", the Government has still failed to prove that the Defendant's prior conviction qualifies as a predicate crime of violence. The Supreme Court has plainly stated that for the ACCA to apply, the Government has to be held to the "demanding requirement" of "a showing that a prior conviction '*necessarily*' involved (and a prior plea *necessarily admitted*) facts equating to generic burglary" *Shepard v. United States*, 544 U.S. 13, 24, 125 S.Ct, 1254, 161 L. Ed. 2d 205 (2005) (*emphasis added*). Assumptions and reasonable inferences in the absence of actual evidence are insufficient to meet the Government's burden.

In *Shepard*, the Supreme Court emphasized that its opinion in *Taylor v. United States,* 495 U.S. 575, 110 S. Ct. 2143 109 L. Ed. 2d 607 (1990), had established only a narrow exception to the general rule that the ACCA prohibits a later court "from delving into particular facts disclosed by the record of conviction." *Shepard*, 544 U.S. at 17 (citing the holding from *Taylor*, 495 U.S. at 602). *Shepard* leaves no doubt that even under that exception, a later court is "limited to the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant or to some comparable judicial record of this information" *Id* at 26. The Government has not produced any *Shepard* approved documents or a recorded colloquy in which the Defendant admitted facts establishing that he was convicted of a generic burglary.

The rare use of the modified categorical approach outlined in *Taylor* and *Shepard* is critical to avoiding Sixth Amendment challenges to increases in sentences under the ACCA. *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 1471 L. Ed. 2d 435 (2000) ("Other

10

than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be … proved beyond a reasonable doubt").

In *Foster, supra*, the majority held that "[t]he more-than-remote possibility that a restaurant or Corner Market could be conducted in railroad car or on a river craft should not undermine the compelling conclusion that [Defendant's] convictions were for the burglaries of buildings or structure." The dissent in *Foster* correctly pointed out that Fourth Circuit's consideration of extrinsic "evidence" was prohibited under *Shepard* from being offered at a Defendant's sentencing.

In *Foster*, which was decided before *Descamps,* the majority concluded that "[a] defendant who pleads guilty to the burglary of a McDonald's Restaurant necessarily pleads guilty to the burglary of a building or structure." The dissent correctly noted that this *dicta* in *Foster* opinion illustrated the danger of such speculation. Without some extrinsic knowledge of the circumstances of location in the case at bar, it could be possible that the McDonald's at issue is similar to the McDonald's Restaurant that operated out of a riverboat in Saint Louis for twenty years. *See Foster*, 662 F.3d at 301, FN 2.

    **B. THE DEFENDANT'S PRIOR NORTH CAROLINA CONVICTION FOR FELONIOUS RESTRAINT IS NOT A CRIME OF VIOLENCE FOR PURPOSES OF THE ACCA.**

The probation officer has concluded that the Defendant's conviction for felonious restraint in North Carolina in 1998 was a "crime of violence", and therefore, is a predicate offense. Felonious restraint is not a crime of violence as applied to the Defendant. The felonious restraint statute provides:

> A person commits the offense of felonious restraint if he unlawfully restrains another person without that person's consent, or the consent of the person's parent or legal guardian if the person is less than 16 years old, and moves the person from the place of the initial restraint by transporting him/her in a motor vehicle or

11

other conveyance. Violation of this section is a lesser included offense of kidnapping.

Felonious Restraint in not one of the enumerated offense contained in § 924(e)(2)(B)(ii). Additionally, the ACCA's "residual clause" is now unconstitutional following the Supreme Court's opinion in *Johnson II*. Therefore, this prior conviction can only serve as a predicate offense under the ACCA is it qualifies as a violent felony under the "force clause." See § 924(e)(2)(B)(i). In considering whether a prior conviction qualifies as a violent felony under the ACCA, the Court general employs the "categorical approach," which considers only the conviction itself and the elements of the offense, not the particular facts of the crime. *United States v. Gardner*, 2016 U.S. App. LEXIS 9066 (4th Cir. 2016) (*citing United States v. Baxter*, 642 F. 3d 475, 476 (4th Cir. 2011). Under the categorical approach, the Defendant's conviction for felonious restraint does not qualify as a violent felony because a conviction could arise from moving a minor (under the age of 16) from the place of the initial restraint by transporting him/her in a motor vehicle or other conveyance without the consent of the minor's parents. Applying the categorical approach, this prior conviction does not have as an element the "use, attempted use, or threatened use of physical force against the person of another;" therefore, this conviction does not qualify as a predicate offense under the "force clause." Although the Government did not explicitly concede that this prior conviction was not a proper predicate, the Government acknowledged that it was not an enumerated offense and offered no argument in support of the proposition that this conviction qualified as a predicate offense under the "Force Clause" despite the Government's burden to prove sentencing enhancements. Government Position, p. 11.

    **C. THE DEFENDANT'S PRIOR NORTH CAROLINA CONVICTION FOR BREAKING AND ENTERING IS NOT CONSIDERED A FELONY UNDER *SIMMONS* AND IT IS NOT AN ACCA FELONY.**

The PSR lists the Defendant's prior 1998 conviction for breaking and entering, in violation of North Carolina General Statute § 14-54, as an ACCA predicate offense. Following the Supreme Court's decision in *Simmons*, the Court must analyze his prior North Carolina conviction in the context of the unique statutory regime mandated by the North Carolina Structured Sentencing Act (the "Act") in effect at the time of the Defendant's prior conviction. The Act created felony sentences strictly contingent on two factors: the "class of the offense" and the offender's "prior record level". *See United States v. Simmons*, 649 F. 3d 237, 240 (4th Cir. 2011). Both factors are established by statute. *Id.* At the time of the Defendant's prior conviction, the Act specified the class of offense. *Id.* The Act mandated that the Court determine an offender's prior record level by adding together the point levels of each of the offender's prior convictions. The State had the burden of proving the prior offender's prior convictions. *Id.* The Act then required the sentencing judge to match the offense class and prior record level pursuant to a statutory table. *Id.* The statutory table governed unless the Court applied a mitigating or aggravating range. The Act provided that the court may only select an aggravating range sentence if the States provided the defendant with thirty days prior notice of its intent to prove the necessary aggravating factors. *Id.* Once the judge identified the appropriate range, the Act provided that he must choose the defendant's minimum sentence from within that range. *Id.* After the judge chose the minimum sentence, a separate statutory chart then supplied the corresponding maximum sentence. *Id.* Importantly, the Act prohibited a sentencing judge from imposing a maximum sentence higher than the one fixed by the statutory chart. Upon his conviction for breaking and entering, the Defendant received a suspended sentence of ten (10) to twelve (12) months. *See* Government Exhibit 4, p. 5. Accordingly, the Defendant was not convicted of a crime punishable by a term of imprisonment exceeding one

year. Therefore, this prior conviction cannot be an ACCA predicate. *See* § 924(e)(2)(B). The Government acknowledges that this prior conviction may not qualify as an ACCA predicate based on *Simmons* its Position on Sentencing. *See* p. 11.

### D. THE DEFENDANT'S PRIOR CONVICTION FOR FEDERAL BANK ROBBERY IS NOT A VIOLENT FELONY FOR PURPOSES OF THE ACCA AND SHOULD NOT BE A PREDICATE OFFENSE.

The Defendant acknowledges that the Fourth Circuit's holding in *United States of America v. James Larry McNeal,* 818 F.3d 141 (4th Cir. 2016) is controlling authority at this time as to the Defendant's prior conviction for federal bank robbery, in violation of 18 U.S.C. § 2113(a); however, the Defendant maintains his objection to the PSR's inclusion of this prior conviction as a predicate violent felony under the ACCA because the *McNeal* opinion has not been addressed by the Fourth Circuit *en banc* or the United States Supreme Court. Further, the opinion in McNeal conflicts with the prior opinion of the Fourth Circuit in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) and the decision of the Supreme Court in *Johnson I*.

### E. WITHDRAWN OBJECTION

The Defendant, by counsel, withdraws his objection that the Defendant's prior North Carolina 2nd Degree Burglary conviction is not a predicate violent felony under the ACCA.

## II. The Defendant Objects to the Base Offense Level Contained In Paragraph 19.

For the reasons set forth in section I above, the Defendant objects to the base offense level of twenty-four (24) contained in paragraph 19 of the PSR. The Probation Officer used assigned a base offense level of twenty-four (24) based upon his erroneous conclusion that the Defendant was previously convicted of two or more prior felony convictions for crimes of

violence. *See* U.S.S.G. § 2K2.1(a)(2). The Defendant asserts that the correct base offense level is twenty (20) based upon § 2K2.1(a)(4)(A).

### III. The Defendant Objects to the Four Level Enhancement pursuant U.S.S.G. § 2K2.1(b)(6)(B) For Possession Of Ammunition In Connection With Another Felony Offense.

The Defendant also objects to the application of the specific offense characteristic enhancement contained in U.S.S.G. § 2K2.1(b)(6)(B) for possession of ammunition in connection with another felony offense. The ammunition which forms the basis for the Defendant's conviction was found on March 20, 2015 during the execution of a search warrant at a hotel room where the Defendant was residing prior to his arrest. The felony which forms that basis for the Government's argument is possession of heroin. The heroin at issue was found during a later search following the Defendant's arrest. The heroin was recovered from the same hotel room at a later time while another guest was staying in the hotel room. The Defendant objects to the Government's assertion that he possessed the subject heroin and the assertion that he possessed the ammunition in connection with the possession of heroin. The ammunition at issue is useless without a firearm and there were no firearms found during either search of the hotel room. The evidence produced by the Government shows that the Defendant purchased the ammunition in 2013 in order to take his step-daughter to a firearms range. The Defendant retained the unused ammunition for over two years following its purchase and there is little evidence to suggest that the ammunition was possessed in connection with any other felony offense.

### IV.     Sentencing Guidelines Calculations

The Defendant requests that the Court sustain his objections to sentencing enhancements set forth in paragraphs 19, 20, 25, 47, 117, and 118 of the PSR. Following the removal of these improper sentencing enhancements, the Defendant's base offense level would be twenty (20) and his offense level total would be seventeen (17) after acceptance of responsibility. In the event the objections are sustained, the Defendant's criminal history category would be reduced to category III, which would result in an advisory sentencing guidelines range of thirty (30) to thirty-seven (37) months of incarceration.

### LEGAL STANDARD

While the Sentencing Guidelines are not mandatory, the Court should take them into account along with the sentencing factors set forth in 18 U.S.C. § 3553(a). Following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 745, 160 L. Ed. 2d 621 (2005), the United States Court of Appeals for the Fourth Circuit has mandated that this Court follow a multi-step process in determining the applicable sentencing range:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within the guidelines ranges serves the factors set forth in § 3553(a) and, if not, select a sentence within the statutory limits that does serve those factors. In doing so, the Court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law…
>
> If an appropriate basis for departure exists, the district court may depart. If the resulting departure still does not serve the factors set forth in § 3553(a), the

Court may then elect to impose a non-guideline sentence (a "variance sentence").

The Court must articulate the reasons for the sentence imposed, particularly the

explaining any departure or variance from the guideline range.

*United States v. Moreland*, 437 F.2d 424, 432 (4th Cir. 2006).

## ARGUMENT

In determining an appropriate sentence for the Defendant, the Court is required to consider (1) nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the need for the sentence imposed taking into consideration the seriousness of the offense, the need to promote respect for the law, the need to provide just punishment, the need to afford adequate deterrence, and to protect the public from further crimes by the Defendant and rehabilitation of the Defendant; (3) the kinds of available sentences; (4) the Sentencing Guidelines; (5) the Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities among similarly situated defendants; and (7) the need for restitution. 18 U.S.C. § 3553(a).

The Defendant's position as to the applicable sentencing guidelines and his outstanding objections to the advisory sentencing guidelines calculations contained in the PSR are addressed above. The need to avoid unwarranted disparities among similarly situated co-defendants, the policy statements of the Sentencing Commission, and restitution are not at issue in the instant case. The remaining sentencing factors are addressed below.

**I.      Nature and Characteristics of the Offense and History and Characteristics of the Defendant.**

The nature and characteristics of the Defendant's offense are described in paragraph 7 of the PSR. The Defendant purchased ammunition at Bob's Gun Shop in Norfolk in late 2013 in

order to take his step-daughter to a private firearms range to take target practice. After the trip to the firing range, the Defendant retained eighty rounds of ammunition for over two years and there is no evidence that he used the ammunition for any purpose. The Defendant acknowledges that he has committed a serious offense and that he should have never possessed ammunition; however, the Government's proposed sentence of fifteen years is greater than necessary to serve the sentencing factors set forth in 18 U.S.C. § 3553(a) and it is improper because the Defendant is not an armed career criminal. The Government's position that the offense is aggravated by the simultaneous possession of firearms and narcotics is not supported by their own evidence. There is insufficient evidence that the Defendant possessed a firearm and drugs at the same time during the period from December 2013 until his arrest. Further, the Defendant is before the Court for illegally possessing ammunition, not a firearm.

      The Defendant has a significant criminal history, which weighs in favor of a sentence of thirty-six (36) months, which is near the high end of the adjusted advisory guidelines range following the removal of the improper enhancements contained in the PSR. However, the Court should disregard the inflammatory allegations in the Government's position on sentencing which are based on dismissed charges and unproven allegations. The Defendant has a good history of gainful employment and he has an education and skills, which will enable him to be self-employed upon his release from incarceration. The Government's concerns about the Defendant's history of substance abuse can be addressed through supervision during his period of supervised release following the completion of his prison term. It should be noted that the Defendant successfully completed his term of federal supervised release following his conviction for bank robbery.

      II.    **The Need For The Sentence Imposed.**

In determining the need for the sentence imposed, the Court should fashion a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). In the instant case, a sentence of thirty-six (36) months of incarceration would reflect the gravity of the offense and serve as a deterrent to others and promote respect for law by discouraging others from unlawfully possessing ammunition.

### III. The Kinds of Sentences Available

The Defendant's adjusted offense level and criminal history category place the Defendant in Zone D on the sentencing table irrespective of the Court's ruling on the unresolved objections. Therefore, the Defendant's term must be satisfied by a sentence of active incarceration, unless the Court grants a downward variance and imposes a sentence below the low end of the advisory guidelines range. *See* U.S.S.G. § 5C1.1(f).

### **CONCLUSION**

For the reasons set forth below, the Defendant, by counsel, respectfully requests that the Court sentence the Defendant to a term of thirty-six (36) months of incarceration.

WESLEY PAUL HADSELL

_____/s/_____
Jason Alan Dunn, Esq.
Virginia State Bar # 68117
Attorney for the Defendant
Jason A. Dunn, PLC
565 N. Birdneck Road
Virginia Beach, VA 23451
Telephone: (757) 383-6848
Facsimile: (757) 383-6849
Email: Jason.dunn@jdunnplc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of June, 2016, I served a true copy of the foregoing via the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record, including:

Benjamin Hatch, Esq.
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number – 757-441-6331
Facsimile Number - 757-441-6899
Email – Benjamin.Hatch@usdoj.gov

I hereby certify that on 18th day of June, 2016, I served a true copy of the foregoing via first class mail to the following non-electronic user:

Darryl A. Upshur
United States Probation
600 Granby Street, Suite 200
Norfolk, VA 235410

_____/s/_____
Jason A. Dunn, Esq.
Virginia State Bar # 68117
Jason A. Dunn, PLC
565 Birdneck Road
Virginia Beach, VA 23451
Telephone: (757) 383-6848
Facsimile: (757) 383-6849
Email: jason.dunn@jdunnplc.com
*Counsel for the Defendant*