IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:15cr116 |
| v. ) | |
| ) | |
| WESLEY PAUL HADSELL, ) | |
| ) | |
| Defendant. ) | |

SUPPLEMENTAL MEMORANDUM OF THE UNITED STATES ON SENTENCING

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Andrew Bosse and Richard D. Cooke, Assistant United States Attorneys, hereby submits its supplemental memorandum on sentencing, pursuant to the Court's directive that the parties address the effect of the Supreme Court's recent decision in *Mathis v. United States*, 579 U.S. ___, 2016 WL 3434400 (2016), on this case. For the reasons stated below, the government submits that the *Mathis* opinion supports the conclusion that the defendant's Virginia burglary conviction is a predicate offense for the Armed Career Criminal Act (the "ACCA").

**SUMMARY OF ARGUMENT**

The question at bar is how *Mathis* affects the analysis of whether the defendant's Virginia statutory burglary conviction is a predicate for the ACCA.[1] If the modified

---

[1] The ACCA, which applies to offenders who have "three previous convictions by any court … for a violent felony or a serious drug offense, or both, committed on occasions different from one another," mandates a minimum fifteen-year term of incarceration for violations of § 922(g)(1). 18 U.S.C. § 924(e)(1). A "violent felony" for ACCA purposes includes a crime that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary …." 18 U.S.C. § 924(e)(2)(B). "Burglary" under the ACCA means generic burglary—that is, a crime with the "basic elements of unlawful, or unprivileged entry into, or remaining in, a

categorical approach applies, as the government argues, then it is appropriate to reference the charging document to determine whether the defendant was convicted of a qualifying generic burglary. For the reasons outlined in the government's prior sentencing memoranda and discussed briefly in Section II below, the criminal information to which the defendant pleaded guilty confirms that he was convicted of generic burglary.

The defendant argues that, under *Mathis*, the alternative terms listed in the Virginia statutory burglary provision are simply different means of committing the same crime, not different elements, and so the conviction fails as a predicate ACCA offense at the outset, with no need for the Court to determine what kind of burglary the defendant committed.

That approach would write out substantially all non-common-law Virginia burglaries as "burglaries" under the ACCA. Putting aside that bizarre result, the defendant's argument is legally unsound. Under still-controlling Fourth Circuit precedent that is in accord with the analysis in *Mathis*, Virginia statutory burglary is divisible, a divisible portion of the Virginia statutory burglary provision satisfies the generic definition for the ACCA's enumerated offense of burglary, and the available *Shepard*-approved documents show that the defendant's prior conviction satisfies that divisible part of Virginia statutory burglary that is no broader than the ACCA's enumerated offense of burglary. *See United States v. Foster*, 662 F.3d 291 (4th Cir. 2011), *reh'g en banc denied*, 674 F.3d 392 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 207

---

building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). It is undisputed that Virginia's statutory burglary law defines crimes that qualify as generic burglary under *Taylor* and crimes broader than generic burglary that would not qualify as ACCA predicates.

(2012). As Judge Ellis noted in a decision on the same question of law issued earlier this week, "the Fourth Circuit in *Foster* squarely addressed whether prior convictions for statutory burglary in Virginia qualify as generic burglaries under the ACCA enumerated crimes clause." *United States v. Major*, Crim. Case No. 1:11cr16, Docket No. 213, at 6 (E.D. Va. July 27, 2016). In *Major*, the court relied on *Foster* in holding that, even after *Mathis*, Virginia statutory burglary is divisible and the modified categorical approach must be used to determine whether a conviction for statutory burglary is a generic "burglary" under the ACCA. *Id.* at 11. That approach is correct: the Fourth Circuit's conclusion that Virginia statutory burglary is divisible is unchanged by *Mathis*. No intervening law has abrogated *Foster*'s interpretation of (a) divisibility, (b) Virginia law, or (c) how to analyze *Shepard*-approved documents.

Because the record in this case establishes that the defendant has at least three ACCA-qualifying convictions, including the Virginia burglary, the § 924(e) enhancement should be applied.

## ARGUMENT

The Fourth Circuit made clear in *Foster* that Virginia statutory burglary is a divisible offense, and it also set out what the government needs to do to establish that a Virginia burglary conviction is for generic burglary such that it counts as an ACCA predicate. Here, the defendant's conviction falls within the ACCA-enumerated offense of burglary under *Foster*, and no intervening precedent alters that conclusion. In particular, the Supreme Court's recent ruling on divisibility in *Mathis* does not change the conclusion that the defendant qualifies for an ACCA sentence. In short, *Foster* applies standards consistent with *Mathis*.

I. **Even after *Mathis*, it remains appropriate to apply the modified categorical approach to Virginia statutory burglary convictions.**

At issue in *Mathis* was whether sentencing courts may use the modified categorical approach to determine whether the ACCA applies in cases where the defendant previously has been convicted of burglary, arson, or extortion under a statute that (i) is phrased in the alternative and (ii) defines the crime of conviction in terms broader than the ACCA's generic definition of the crime. *See Mathis*, 2016 WL 3434400, at *4-5. The Supreme Court held that the answer to this question turns on whether the alternative statutory terms constitute elements of the crime or merely the means by which the offense may be committed. If the statute lists elements in the alternative, then the statute is properly viewed as divisible in that it defines multiple crimes, and so it is appropriate to apply the modified categorical approach to determine which crime the defendant committed. *Id.* at *10. But, if the alternative statutory terms are merely different means of committing the offense—or, as the Supreme Court has called them, the "brute facts"—then the statute is indivisible and cannot serve as a predicate ACCA offense. *Id.* at *3.

The Iowa burglary statute at issue in *Mathis* was broader than generic burglary as defined by the Supreme Court in *Taylor* because generic burglary requires, among other things, that the burglar enter "a building or structure," while Iowa's burglary offense reaches unlawful entry into cars and boats. Critically, *Mathis* held that burglaries of cars and boats under Iowa law could not be deemed divisible from burglaries of buildings because, under Iowa law, jurors need not unanimously agree whether the location burgled was a car, boat, or building. How to construe the Iowa burglary law was not difficult in *Mathis* because the Iowa Supreme Court already had answered the question. "The listed

4

premises in Iowa's burglary law, the State Supreme Court held, are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Id.* at *10.

*Mathis* provides a number of different ways to determine whether alternative terms in an offense are different elements or merely different means when that question has not already been directly answered by a state supreme court. For example, if the statutory alternatives carry different punishments, then the alternatives must be elements. *Id*. But if statutory alternatives are merely "illustrative examples," then they are merely different means. *Id*. If the statute on its face or controlling state caselaw does not answer the means-elements question, then courts may look to charging language in indictments and jury instructions for the offense. *Id*. at *11. The indictment and jury instructions will reveal what a prosecutor must prove, although of course these sources may not conclusively answer the question of how state law is properly construed. *Id*.

### A. Virginia's prohibition on statutory burglary lists elements in the alternative.

Two Virginia code provisions, which are *in pari materia*, define statutory burglary in the state: Virginia Code §§ 18.2-90 and 18.2-91. In 1996, the year the defendant was convicted of statutory burglary in James City County, § 18.2-91 provided in pertinent part that an individual is guilty of statutory burglary if he does "any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape or robbery." Section 18.2-90, in turn, provided in pertinent part:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop,

5

> manufactured home, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation … shall be deemed guilty of statutory burglary ….[2]

Read together, §§ 18.2-90 and 18.2-91 set forth all of the elements of generic burglary as well as burglaries that are non-generic.

The Fourth Circuit has interpreted Virginia law and concluded that § 18.2-90 creates three distinct elements identifying classes of locations that may be burgled. The three classes are "(1) an 'office, shop … storehouse, warehouse, banking house, or other house'; (2) a 'ship, vessel, or river craft or any railroad car'; or (3) 'any automobile, truck, or trailer … [being] used as a dwelling or place of human habitation.'" *Foster*, 662 F.3d at 293-94 (quoting Va. Code § 18.2-90).[3] As the district court explained in *Major*, "the Fourth Circuit [in *Foster*] determined that the Virginia burglary statutes were divisible because they provided alternative elements, and therefore under the modified categorical approach, a conviction under the Virginia burglary statutes could sometimes

---

[2] In 2004, the Virginia legislature amended § 18.2-90 to replace the clause "office, shop … or other house" with the clause "building permanently affixed to realty." 2004 Va. Acts Ch. 842. As the court noted in *Major*, "[t]his amendment essentially incorporated the Supreme Court of Virginia's prior holding that all of the places referred to in the pre-2004 clause referred to improvements affixed to the ground, or realty." Crim. Case No. 1:11cr16, Docket No. 213, at 11 n.11 (citing *Graybeal v. Commonwealth*, 324 S.E.2d 698, 699 (Va. 1985)).

[3] What divided the Fourth Circuit in *Foster* was how to analyze particular state records in a defendant's case to determine which of the three classes described above was used to convict the defendant. As discussed in greater detail below, the Fourth Circuit's analysis of state records under *Shepard v. United States*, 544 U.S. 13 (2005), has not been affected by intervening law and in particular was not disturbed by *Mathis*. Thus, *Foster* remains binding precedent, and under *Foster*, the records in this case establish that the defendant's burglary conviction falls in the first class in § 18.2-90 (*i.e.*, structures affixed to the land) and that the first class satisfies generic burglary under *Taylor*. Nothing in *Mathis* undermines any step in the analysis.

qualify as generic burglary under the ACCA enumerated crimes clause." Crim. Case No. 1:11cr16, Docket No. 213, at 11. This interpretation of state law as establishing three distinct categories that are separate elements is in line with the Supreme Court's analysis in *Mathis* and remains sound. *See also, e.g.*, *United States v. Gambill*, 554 F. App'x 168 (4th Cir. 2014).

As the reasoning in *Foster* recognizes, with respect to the statutory text, § 18.2-90 is markedly different from the Iowa burglary statute at issue in *Mathis*. Section 713.1 of the Iowa Code provides that a person is guilty of burglary if he:

> having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Iowa Code § 702.12, in turn, separately defines an "occupied structure" as a number of locations, including "any building, structure, appurtenances to buildings and structures, land, water, or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value."

The Virginia legislature, conversely, did not use a similarly defined term to house all of the locations that, if burglarized, would give rise to a statutory burglary conviction. Rather, as noted, Virginia Code § 18.2-90 contained three separate clauses: (1) burglary of an "office, shop, storehouse, warehouse, banking house, or other house"; (2) burglary of a "ship, vessel, or river craft or any railroad car"; and (3) burglary of "any automobile, truck, or trailer … [being] used as a dwelling or place of human habitation." *Foster*, 662

7

F.3d at 294 (internal quotations and citation omitted). Consistent with *Foster* and the statutory text, the Virginia Supreme Court has conceptualized § 18.2-90 as comprising distinct "statutory categories." *Graybeal v. Commonwealth*, 324 S.E.2d 698, 700 (Va. 1985) (explaining that the items in the first category—*i.e.*, office, shop, storehouse, warehouse, banking house, or other house—are grouped together because they "share the common element of being improvements affixed to the ground, that is, they are realty").

The conclusion that the statute's categories of places that may be burglarized are elements rather than means is supported by the Virginia legislature's addition of a unique element to the third category ("automobile, truck, or trailer"). To sustain a conviction for burglary from a wheeled vehicle, the Commonwealth must also prove that such vehicle was "used as a dwelling place or place of human habitation"; it does not have to prove that additional element when the place burglarized falls into either the first or second categories. As the Virginia Court of Appeals explained in *Allard v. Commonwealth*, "[w]ith respect to structures other than the dwelling house of another, the legislature specifically chose to impose the habitability element only for automobiles, trucks or trailers." 24 Va. App. 57, 64, 480 S.E.2d 139, 142 (Va. Ct. App. 1997). The defendant in the *Allard* case was convicted of burglarizing a school, which falls into the first category listed in the Virginia statute (affixed realty), not the third. Thus, the court held, "the Commonwealth was not required to prove the school's habitability *as an element of the crime* in this case." *Id.* (emphasis added).

The Iowa statute at issue in *Mathis* makes no such category-by-category distinction. *See* Iowa Code § 702.12. It simply requires jurors to determine whether an individual entered an "occupied structure," not to agree on which of the many types of

structures that fall under the definition of "occupied structure" the individual actually entered. By contrast, the Virginia burglary statute is like the hypothetical burglary statute the Supreme Court used in *Descamps v. United States* as illustrative of the types of state law for which the modified categorical approach is appropriate: the "kind of statute [that] sets out one or more elements of the offense in the alternative—for example, *stating that burglary involves entry into a building or an automobile*." 133 S. Ct. 2276, 2281 (2013) (emphasis added).

Even if the Court confined its means-elements analysis to the text of the Virginia statute, that text compels the conclusion that the different classes of locations listed there are elements defining different burglaries, not merely alternative means. Decisions from the state's appellate courts support that conclusion.

   **B.**  **The criminal information charging the defendant with burglary confirms that the statute in question lists alternative elements, not just means.**

To the extent the means-elements question is not definitively answered by the foregoing, a review of the record of the prior conviction itself may be necessary. *Mathis*, 2016 WL 3434400, at *11. Here, the defendant's record of conviction supports the conclusion that § 18.2-90 lists alternative elements. The criminal information for the defendant's January 21, 1996 burglary charged him with "break[ing] and enter[ing] … an office, shop, storehouse, warehouse or other house, to-wit: McDonalds …." Gov't Ex. 3 at 1. The language in the charging document tracks the Virginia Supreme Court's analysis of the statute in *Graybeal*; the defendant was charged with breaking and entering a fixed structure, not (i) a movable water or rail vehicle or (ii) a movable but inhabited wheeled vehicle. The criminal information's use of one alternative statutory category to

9

the exclusion of the other two is further evidence that § 18.2-90's groups of locations that may be burglarized constitute alternative elements that define separate statutory burglary crimes. *See Mathis*, 2016 WL 3434400, at *11.

Nor is there reason to think that this reference to one alternative statutory category was a quirk occurring in this defendant's case alone; the defendant in *Graybeal*, for example, "was indicted on twelve counts of nighttime breaking and entering an 'office or storehouse'" under Va. Code § 18.2-91. *Graybeal*, 324 S.E.2d at 698-99. At trial in that case, "the evidence established that the structures broken into were not offices or storehouses as set forth in the indictment," but rather several uninhabited "furnished trailers or mobile homes … equipped with a hitch so that it could be pulled by a truck," *i.e.*, not "sectional houses" or "modular homes." *Id.* at 699. The defendant in *Graybeal* later challenged his convictions, arguing that the Commonwealth had "failed to prove a violation of the code section referenced in the indictment." *Id.* The *Graybeal* court agreed with the defendant, concluding that the convictions could not be sustained on either that basis or under § 18.2-90's reference to "trailer" because the trailers the defendant had burglarized were not "used as a dwelling or place of human habitation." *Id.* at 699-700.

        **C.**    **The Virginia Model Jury Instructions also suggest that the categories listed in § 18.2-91 are elements, not means.**

The defendant has cited commentary to a 2001 Virginia model jury instruction, which lists out § 18.2-91's categories of places that may be burglarized, as evidence that those categories are means and not elements. Def.'s Supp. Mem. at 8. But to the extent the Virginia Model Jury Instructions are relevant to the inquiry, they suggest the opposite. The current version of the statutory burglary instruction states simply: "The

defendant is charged with the crime of statutory burglary. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime: (1) That the defendant [without permission] [in the nighttime entered; in the daytime broke and entered; in the daytime entered and concealed himself in] [a dwelling house; a building permanently affixed to realty]; and (2) That he did so with intent to commit [larceny …]." 1-12 Virginia Model Jury Instructions – Criminal Instruction No. G12.220. The wording of the instruction favors the government's argument. It includes exemplars from only one of § 18.2-91's three categories of places that may be burglarized, treating the act of burgling a building as its own crime. That is in line with the way the burglaries were charged both in the defendant's case and in *Graybeal*, where the charging documents did not list out all three categories of places that may be burglarized as if they were interchangeable means of committing the same crime.

## II. The defendant remains subject to the ACCA because his prior statutory burglary conviction is a qualifying predicate under the ACCA's enumerated crimes clause.

The defendant has suggested that, even if the modified categorical approach were appropriate and the Court examined *Shepard*-approved documents to determine which type of statutory burglary he was convicted of, the Court could not conclude that the burglary was of a building or structure. Def.'s Position on Sentencing at 11.

Here, the criminal information charged the defendant with burglarizing a McDonald's, and the Fourth Circuit's opinion in *Foster* fortuitously answers the defendant's challenge: "[a] defendant who pleads guilty to the burglary of a McDonald's Restaurant necessarily pleads guilty to the burglary of a building or structure." 662 F.3d at 296; *see also Major*, Crim. Case No. 1:11cr16, at 14-16 (relying on *Foster* in holding

11

that burglaries of two locations with named street addresses were generic burglaries under the ACCA). That is so regardless of any fanciful suppositions about whether this particular McDonald's could have been a floating restaurant. *See* Def.'s Position on Sentencing at 11.

The issue in *Foster* was whether John Joel Foster's prior convictions in Virginia for statutory burglary counted as violent felonies under the ACCA where the relevant indictments described the burglarized locations as merely the "Corner Market" and the "Sunrise-Sunset Restaurant." *Id.* at 292. The Fourth Circuit answered this question in the affirmative, rejecting Foster's argument that there was insufficient information in the record of conviction to allow a court to determine whether the burglarized stores were in fact operated out of structures or buildings (as required by the generic definition of burglary), as opposed to out of small river craft or railroad cars. *Id.* at 295.

As the Fourth Circuit explained, accepting Foster's argument would require the court "to abandon logic and embrace the absurd in conducting [its] ACCA analysis." *Id.* The court noted that the very names of the burglarized locations compelled the conclusion that Foster had broken and entered buildings or structures. Yet Foster, like the defendant here, wanted the court to blind itself to these facts because of a "more-than-remote possibility that a restaurant or Corner Market could be conducted in a railroad car or on a river craft." *Id.* at 295. *Foster* rejected that kind of speculation.

Likewise, in *United States v. Baxter*, the Fourth Circuit held that "the term 'shop' in [a defendant's] indictment … did not take his conviction outside of the sweep of the *Taylor* holding on the meaning of 'burglary' under the ACCA"; rather, "the reference to 'shop' in the indictment 'necessarily established' that [his] burglary conviction was based

on his entry into a structure that was 'affixed to the ground,' namely, 'a building.'" 642 F.3d 475, 478 (4th Cir. 2011).

In *Foster* and *Baxter*, the Fourth Circuit has emphasized that, in applying *Shepard* to determine where state court documents place a defendant's offense within a divisible statute under the ACCA, courts are not entirely removed from "'the real world, and courts should not refuse to apply it because of divorced-from-realty, law-school-professor-type hypotheticals that bear no resemblance to what actually goes on.'" *Foster*, 662 F.3d at 296 (quoting *United States v. Rainer*, 616 F.3d 1212, 1216 (11th Cir. 2010)). Put differently, "when considering the ACCA [courts] are not required to 'wear blinders' or to cast logic aside 'merely because [a defendant] conjure[s] up a speculative possibility.'" *Id.* (quoting *United States v. Miller*, 478 F.3d 48, 52 (1st Cir. 2007)).

Here, the government need not disprove every "speculative possibility" that the defendant raises. *See id.* at 296. As the defendant acknowledged by his guilty plea, he burglarized a McDonald's that was "an office, shop, storehouse, warehouse or other house"; had the McDonald's been of the floating variety, he presumably would have been charged with the separate element of burglarizing a McDonald's on a "ship, vessel, or river craft." As *Foster* makes clear, in a conclusion unaffected by *Descamps* or *Mathis*, that is enough to demonstrate that the defendant committed generic burglary.

## CONCLUSION

For the foregoing reasons and the reasons stated in the government's previously filed sentencing memoranda, the United States respectfully suggests that the Armed Career Criminal Act applies and that a sentence of at least 15 years' imprisonment is appropriate and consistent with the factors set out in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Andrew Bosse
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: andrew.bosse@usdoj.gov

Richard D. Cooke
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
SunTrust Building
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Office Number: 804-819-5449
E-Mail Address: richard.cooke@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of July, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the following counsel of record:

Jason A. Dunn, Esq.
Jason A. Dunn, PLC
565 N. Birdneck Rd.
Virginia Beach, Virginia 23451

By: _____/s/_____
Andrew Bosse
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: andrew.bosse@usdoj.gov