IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | No. 2:15cr116 |
| v. | ) | |
| | ) | |
| WESLEY PAUL HADSELL, | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE OF THE UNITED STATES TO THE DEFENDANT'S SECOND SUPPLEMENTAL POSITION ON SENTENCING

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Andrew Bosse, Assistant United States Attorney, hereby submits its response to the defendant's second supplemental memorandum on sentencing, Docket No. 53, filed on Monday, November 7. For the reasons stated below and in the government's previous sentencing memoranda, the government submits that the Armed Career Criminal Act (the "ACCA") applies to the defendant, consistent with the Fourth Circuit's decision in *United States v. Foster*, 662 F.3d 291 (4th Cir. 2011), *reh'g en banc denied*, 674 F.3d 392 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 207 (2012). Neither of the two new cases cited by the defendant alters that analysis. The Fourth Circuit's recent decision on West Virginia's burglary statute in *United States v. White*, 836 F.3d 437 (4th Cir. 2016), is distinguishable because West Virginia's burglary statute is materially different from Virginia's, and *United States v. Gambill*, an opinion from the Western District that has been appealed by the government, was wrongly decided. 2016 WL 5865057 (W.D. Va. Oct. 7, 2016). The government submits instead that this Court should follow Judge Kiser's decision in *United States v. Blackwell*, 2016 WL 5849384

(W.D. Va. Oct. 6, 2016), also issued since the last round of briefing on this matter, and Judge Ellis's decision in *United States v. Major*, 2016 WL 4059662 (E.D. Va. July 27, 2016), both of which rely on *Foster* to hold that Virginia's burglary statute is divisible and may qualify as an ACCA predicate.

## ARGUMENT

Because the parties already have outlined the statutory and decisional law backdrop to the question at bar—whether the defendant's Virginia statutory burglary conviction is a predicate for the ACCA, *see* Docket No. 50—the government will limit its argument in this second supplemental memorandum to addressing the new cases cited by the defendant and the new amendment to the sentencing guidelines that affects the base offense level applicable to him. It is important to note at the outset, though, that each of the new cases cited by the parties must be read in light of the Fourth Circuit's *Foster* decision, which, as Judge Ellis put it, "squarely addressed whether prior convictions for statutory burglary in Virginia qualify as generic burglaries under the ACCA enumerated crimes clause." *Major*, 2016 WL 4059662, at *3. The government's contention is that *Foster*, which holds that Virginia burglary is divisible, continues to apply. Because the burglary statute is divisible, the modified categorical approach applies, and the *Shepard*-approved documents in the defendant's case show that his prior Virginia conviction is for a qualifying generic burglary.

**A. The Fourth Circuit's holding as to West Virginia burglary has no bearing on whether Virginia statutory burglary is divisible.**

In *United States v. White*, the Fourth Circuit held that because West Virginia's burglary statute criminalizes burglaries of enclosures other than "'building[s] or . . . structure[s],'" it criminalizes conduct broader than generic burglary and so cannot qualify

as an enumerated "burglary" under the ACCA. 836 F.3d at 444-45 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)). The case is distinguishable, however, because West Virginia's burglary statute is materially different from Virginia's. The West Virginia statute defines as burglary the breaking and entering of a "dwelling house, or an outhouse adjoining thereto or occupied therewith." W. Va. Code § 61-3-11(a). A different subpart of the statute then lists enclosures that may qualify as a "dwelling house," and that undifferentiated list includes both qualifying generic buildings and structures *and* enclosures that do not qualify as places subject to generic burglary as defined in *Taylor*: "[t]he term 'dwelling house,' . . . shall include, but not be limited to, a mobile home, house trailer, modular home, factory-built home or self-propelled motor home, used as a dwelling regularly or only from time to time, or any other nonmotive vehicle primarily designed for human habitation and occupancy and used as a dwelling regularly or only from time to time." W. Va. Code § 61-3-11(c).

The West Virginia burglary statute is akin to the Iowa burglary statute at issue in *Mathis*. The Iowa burglary statute uses "occupied structure" as its central defined term. Iowa Code § 713.1. Like West Virginia, Iowa then provides an undifferentiated list of places that qualify as an "occupied structure," including "land, water, or air vehicle, or similar place adapted for overnight accommodation of persons." Iowa Code § 702.12.

The Virginia burglary statute is distinguishable from the West Virginia law for the same reasons it is distinguishable from the Iowa statute analyzed in *Mathis*. *See* Docket No. 50, Gov't Supp. Mem., at 7-9. Briefly, the Virginia law does not use a single defined term to describe all locations that can be burglarized. Instead, as *Foster* held, the three statutory categories of places that can be burglarized are set out in three separate clauses

3

in the text of Virginia Code § 18.2-90 itself: (1) burglary of an "office, shop, storehouse, warehouse, banking house, or other house"; (2) burglary of a "ship, vessel, or river craft or any railroad car"; and (3) burglary of "any automobile, truck, or trailer . . . [being] used as a dwelling or place of human habitation." *Foster*, 662 F.3d at 294 (internal quotations and citation omitted).

The different structure of the Iowa and West Virginia statutes leads to substantive differences in how burglary is charged and proved in those states. To prove burglary in West Virginia and Iowa, the state need only show a qualifying incursion into a "dwelling house" or "occupied structure," respectively; jurors are not required to agree on which type of place listed in the separate definitions of those terms was burglarized. The West Virginia Supreme Court of Appeals, for example, has approved an indictment charging only the breaking and entering of "a dwelling house," without further specifying which of the dwelling house exemplars listed in subpart (c) of the statute was entered. *State v. Wallace*, 517 S.E.2d 20, 22 (West Virginia 1999) (indictment charged "breaking and entering . . . a dwelling house belonging to Donna Lee Miller."). Similarly, under Iowa law, a jury does not need to agree on which burglarizable location was actually involved in the crime. *See State v. Duncan,* 312 N.W.2d 519, 523 (Iowa 1981). That is, an individual can be convicted of burglary in Iowa if the state proves that the location burgled was an "occupied structure," without the need to differentiate whether that structure is a building (included in generic burglary) or a water or air vehicle (not included). Such state decisions support the federal courts' conclusions that the West Virginia and Iowa statutes cover conduct broader than generic burglary, and also the

4

conclusion that their separately-defined lists of places that may be burglarized describe alternative means to committing burglary, not separately chargeable elements.

The Virginia burglary statute does not work that way. Unlike the Iowa and West Virginia statutes, the Virginia law contains three distinct categories of locations that may be burgled. *See Foster*, 662 F.3d at 293-94. In the defendant's case, for example, he was charged with breaking and entering "an office, shop, storehouse, warehouse or other house, to wit: McDonalds." Docket No. 44, Ex. 3. He was not charged with breaking and entering a fixed structure, or alternatively a movable water or rail vehicle, or alternatively a movable, inhabited wheeled vehicle.

In Virginia, unlike in Iowa and West Virginia, the category of locations that is charged matters to the adequacy of the indictment and to the evidence that the government must put on to secure a conviction. For example, to convict in Virginia for a burglary of the third category of locations—wheeled vehicles—a prosecutor must prove the additional element that the vehicle was "used as a dwelling place or place of human habitation." That same element, however, does not apply to the first two categories of structures. *See Allard v. Commonwealth*, 24 Va. App. 57, 64, 480 S.E.2d 139, 142 (Va. Ct. App. 1997) (holding that the Commonwealth was not required to prove habitability of a burglarized school as an element). In other words, the Virginia statute is analogous to the hypothetical burglary law the Supreme Court used as its example, in *Descamps v. United States*, of the type that requires the modified categorical approach: the "kind of statute [that] sets out one or more elements of the offense in the alternative—for example, *stating that burglary involves entry into a building or an automobile*." 133 S. Ct. 2276, 2281 (2013) (emphasis added).

### B. *United States v. Gambill* was wrongly decided.

The defendant also cites the recent Western District opinion *United States v. Gambill*, in which the court held that Virginia statutory burglary is not divisible—*i.e.*, that in *Mathis*'s terms, the list of categories of places that may be burglarized is a list of different means to commit the crime, not separate elements. 2016 WL 5865057, at *3-5. *Gambill* is an out-of-district case that has been appealed by the government. *See* W.D. Va. Crim. Case No. 1:10cr13, Docket No. 167. The government's position is that the case is wrongly decided and that the reasoning supporting the decision is flawed. As the court itself noted, "no Virginia appellate court decision definitively states whether the various locations listed in the applicable statute are elements or means." *Id.* at *4. After acknowledging that, though, the court goes on to rely almost entirely on the Virginia Supreme Court's decision in *Graybeal v. Commonwealth*, 228 Va. 736 (1985), a decision that pre-dated, and was cited in, the Fourth Circuit's decision in *Foster* holding that Virginia statutory burglary *could* qualify as an ACCA predicate and treating the three categories within the statute as divisible.

*Graybeal* will not bear the weight the court's analysis puts on it. Briefly, the *Gambill* court's reasoning is as follows: the indictment at issue in *Graybeal* charged breaking and entering an "office or storehouse" in violation of the Virginia burglary statute; the defendant was convicted and argued on appeal that not only were the structures he entered not offices or storehouses, but also that none of the other categories of places listed in the statute applied to what he did; the Virginia Supreme Court ruled on both parts of that argument; and thus the Virginia Supreme Court must have implicitly thought that the places listed in the Virginia statute are means rather than elements,

because it "treated the various locations listed in the statute as essentially interchangeable." 2016 WL 5865057, at *4-5. At risk of stating the obvious, that reads quite a bit into a brief and far-from-pellucid decision that is over thirty years old. The Virginia Supreme Court in *Graybeal* was not asked whether the state burglary statute was divisible for ACCA purposes, or whether the categories of places described in the statute are means or elements. Those issues are not usually the concern of state courts generally and were not the concern of *any* courts until years after *Graybeal* was decided. Additionally, *Gambill*'s use of *Graybeal* relies on speculation about the structure of the Virginia Supreme Court's analysis. And a closer look at *Graybeal* suggests that that speculation may be incorrect, and that the decision in fact supports the government's argument that the categories of places that may be burglarized define different elements and thus different species of burglary.

The court in *Graybeal* first asked whether the Commonwealth "failed to prove a violation of the code section referenced in the indictment." 324 S.E.2d at 699. The answer was yes—the Commonwealth had not proved that the defendant "broke into an office or storehouse, as stated in the indictment." *Id.* The court then went on to address the *defendant's* arguments that he also had not violated any *other* provisions of the burglary statute. It is from that second part of the analysis that *Gambill* extracts the conclusion that the Virginia Supreme Court treated all of the categories of places in the burglary statute as interchangeable means rather than separate elements. But the more likely explanation of the *Graybeal* court's analysis—and one that favors the government's interpretation—is that the court was deciding whether the defendant's

7

conviction should be reversed *and dismissed*, or simply reversed subject to retrial on a corrected indictment.

Under Virginia law, "[a] fatal variance occurs when the criminal pleadings charge one offense and the evidence proves another," and "[a] conviction for a crime other than the one charged in the indictment is plainly reversible." *Commonwealth v. Bass*, 786 S.E.2d 165, 170 (Va. 2016) (citing *Gardner v. Commonwealth*, 546 S.E.2d 686, 689-90 (Va. 2001). With that in mind, the defendant's argument that no other provisions of the burglary statute apply to what he did makes sense: if the government's evidence at trial proved *a different burglary crime* than the one charged in the indictment, then the defendant could be retried on a corrected indictment charging the correct crime. The point the defendant in *Graybeal* was making, and with which the court agreed, is that no other crime defined by the statute "could be used against him." *Graybeal*, 324 S.E.2d at 699. After all, if a separate crime defined by the statute *could* be used against the defendant, the most he could hope to gain would be a technical reversal that would leave him open to a new indictment listing as a different element the correct location of the crime. Because the court agreed that the evidence could not show a violation of any Virginia statutory burglary crime, it not only reversed but dismissed the burglary charges against the defendant. *Id.* at 700.

Reading the case this way makes better sense of the *Graybeal* defendant's argument—given the fatal variance between the pleadings and the evidence, why else would he want to take on the additional burden of showing that no part of the statute could apply to what he did? It also makes better sense of the structure of the court's

8

analysis.[1]  And it supports the government's interpretation here, because it means the Virginia Supreme Court understood that the different categories of places that may be burglarized define separate crimes that could be recharged without offending the proscription against double jeopardy—not interchangeable means of committing the same crime.

*Graybeal* is just one case the government cited in its initial supplemental memorandum, Docket No. 50, in support of the argument that the Virginia statute is divisible.  The *Gambill* court, however, grounded almost its entire analysis on what is likely a flawed understanding of what the *Graybeal* court was doing.  It lacks persuasive authority for that reason alone.

Additionally, without belaboring the point, the Fourth Circuit in *Foster* was aware of and indeed cited *Graybeal* en route to holding that Virginia burglary is divisible. Among its other weaknesses, the *Gambill* opinion gives short shrift to the continuing vitality of *Foster*, as described more fully in the government's first supplemental memorandum, Docket No. 50.

### C. *United States v. Blackwell* provides additional persuasive authority that the Virginia burglary statute is divisible.

After the last round of briefing on this issue, Judge Kiser in the Western District of Virginia issued an opinion holding that Virginia burglary is divisible and so can be an

---

[1] That interpretation also accords with *Graybeal*'s description of separate "statutory categories" within the burglary statute, and the court's application of the *ejusdem generis* doctrine *within* one of those categories, when it construed the meaning of the phrase "other house" by reference to the other places listed in the same category, which the court described as "shar[ing] the common element of being improvements affixed to the ground, that is . . . realty."  *Id.*  If all of the categories of places that could be burglarized were interchangeable means rather than elements, it would have made more sense to apply the doctrine of *ejusdem generis* across the board.

9

ACCA predicate offense under the enumerated crimes clause of the statute. *Blackwell v. United States*, Slip Copy, 2016 WL 5849384, at *2 (W.D. Va. Oct. 6, 2016). Unlike in *Gambill*, the court in *Blackwell* recognized that the Fourth Circuit's holding in *Foster* decided the issue. The court quotes from Judge Ellis's opinion in *United States v. Major*: "'the Fourth Circuit determined [in *Foster*] that the Virginia burglary statutes were divisible because they provided alternative elements.'" *Blackwell*, 2016 WL 549384, at *3 (quoting *United States v. Major*, 2016 WL 4059662, at *6 (E.D. Va. July 27, 2016)).

*Blackwell*, like *Major*, concluded that *Mathis* does not affect the Fourth Circuit's determination that Virginia statutory burglary is divisible. As the court explained, "the same precedents that undergirded *Foster* resolved the issue in *Mathis*. . . . [t]he 'longstanding principles' that were announced in *Taylor* and applied in *Foster*, 'and the reasoning that underlie[d] them,' made the conclusion in *Mathis* a foregone one." *Blackwell*, 2016 WL 549384, at *5 (quoting *Mathis*, 136 S. Ct. at 2251-52). Because "[t]he rules applicable to the ACCA have been around since *Taylor* and were applied in *Foster*," and "[n]either *Johnson* nor *Descamps* nor *Mathis* altered those rules," the court reasoned, *Foster* remains good law. *Blackwell*, 2016 WL 549384, at *5. The government submits that *Blackwell* and *Major* are correct in holding that no intervening law has abrogated *Foster*'s interpretation of divisibility or Virginia law. It also notes that the Fourth Circuit's precedent about the Virginia burglary statute is not unique; the Fifth Circuit recently held that a Texas burglary offense is divisible. *United States v. Uribe*, __F.3d__, 2016 WL 5724779 (5th Cir. Oct. 3, 2016).

### D. The defendant is correct that U.S.S.G. § 2K2.1(a)(3) sets the base offense level for his federal conviction.

The defendant correctly notes that, because the sentencing will occur after the August 1, 2016, effective date of the new amendments to the Sentencing Guidelines, U.S.S.G. § 2K2.1(a)(4), rather than U.S.S.G. § 2K2.1(a)(2), sets the base offense level for his crime of conviction. That is so because burglary is no longer listed as a "crime of violence" in U.S.S.G. § 4B1.2(a), which is cross-referenced in U.S.S.G. § 2K2.1. For purposes of choosing the subpart of U.S.S.G. § 2K2.1(a) that fits the defendant's offense, then, the defendant now has only one "crime of violence," for federal bank robbery. *See* PSR ¶ 44; *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) (holding that federal bank robbery is a "crime of violence"). The only other potential "crime of violence" that would make application of U.S.S.G. § 2K2.1(a)(2) appropriate, now that the burglaries have been written out as qualifying crimes, is the defendant's North Carolina conviction for felonious restraint. PSR ¶ 39. Felonious restraint, however, arguably qualifies as a lesser included offense of kidnapping, and so under the Fourth Circuit's reasoning in *United States v. Flores-Granados*, 783 F.3d 487 (4th Cir.), *cert. denied*, 136 S. Ct. 224 (2015), it is probably not a qualifying crime of violence. U.S.S.G. § 2K2.1(a)(4) sets the base offense level at 20 rather than 24.

The defendant also repeats the argument that the four-level enhancement the PSR assigned by virtue of U.S.S.G. § 2K2.1(b)(6)(B), for possessing ammunition in connection with another felony offense, should not apply. The government disagrees for the reasons stated in its initial sentencing position paper, Docket No. 44, at 12-13.

## CONCLUSION

For the foregoing reasons and the reasons stated in the government's previously filed sentencing memoranda, the United States respectfully suggests that the Armed Career Criminal Act applies and that a sentence of at least 15 years' imprisonment is appropriate and consistent with the factors set out in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Andrew Bosse
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: andrew.bosse@usdoj.gov

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of November, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the following counsel of record:

Jason A. Dunn, Esq.
Jason A. Dunn, PLC
565 N. Birdneck Rd.
Virginia Beach, Virginia 23451

By: _____/s/_____
Andrew Bosse
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: andrew.bosse@usdoj.gov